Thank you. Good morning. I may have pleased the Court. Brian Jacobs from Morvillo, Abramowitz, Bryan Dyson, and Anello, on behalf of Ms. Bardakova, on appeal. This Court should reverse the District Court's decision applying the Fugitive Disentitlement Doctrine to prevent Ms. Bardakova from challenging the indictment against her for two reasons. First, because she's not a fugitive and the District Court's decision on de novo review was erroneous, that she was a fugitive. Second, even if this Court finds Ms. Bardakova as a fugitive, the District Court's decision was still erroneous in abuse of discretion because the purposes of the doctrine are not served by applying it in this case. I'll start first with the definition. When you're using the word fugitive, does that include both the so-called traditional and constructive? I mean, when you use it, are you talking to me about both? Yes, Your Honor. I think Ms. Bardakova does not meet the definition of either a traditional fugitive or a constructive flight fugitive, and I can address each of them. The opinion below focuses principally on the definition of a traditional fugitive. And our position here is that a traditional fugitive, as this Court articulated in the Beskan decision, is somebody who flees, evades, or escapes, arrests. Someone who commits a crime in the United States and leaves for the purposes of avoiding prosecution. You use the word flees. I use the word leaves. Leaves for purposes of avoiding prosecution. Your Honor, let me ask you a question. The indictment alleged conduct inside the United States by Ms. Bardakova? Yes, it did, Your Honor. Did she allegedly lie to the FBI in the United States? Yes, Your Honor. So she was present in the United States when the alleged criminal activity took place? Yes, Your Honor. Indeed, she's alleged to have done financial transactions at the direction of Oleg Deripaska. Is that a correct pronunciation? I'm not sure, Your Honor, but that sounds correct.  I suspect you've used that name before, Pat. Could you help me out with it? I would say Deripaska. Deripaska. Then I'll use your pronunciation. Is she alleged to have done financial transactions through shell corporations in the United States on his behalf? In violation of the executive order then President Trump? Your Honor, the allegations in the indictment are extensive and Your Honor's... Answer my question. Yes, Your Honor. Whether they're extensive or not. I've read the indictment. Tell me if she's alleged to have done things in the United States in violation of that executive order. Yes, Your Honor. So her conduct's in the United States. Some of her conduct is in the United States. And then she left the United States and refuses to return. Does she not? She has not returned to the United States. Does she refuse to return to the United States? You represent her. You talk to her. Do you know whether she's willing to come back to the United States? She is not coming back to the United States, Your Honor. So she refuses to return to the United States. Correct, Your Honor. Notwithstanding the fact that she's indicted in the Southern District with regard to those crimes. Correct, Your Honor. How does she not fit the definition of a traditional fugitive? Because a fugitive is somebody who flees process once process has been executed. Let me ask you this. An individual kills someone on Canal Street and leaves the United States by flying out of Newark, if they can get a flight at this point in time. Is that person and goes to Russia and refuses to return. Is that person a fugitive? Your Honor. Is that person a fugitive in your view? Under the constructive flight analysis, perhaps. I would argue they are not a traditional fugitive. The definition in Section 2466, and I understand Your Honor's position. But Congress, when they had to articulate the very issue Your Honor is focused on, wrote that a fugitive is someone who after notice and knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution, purposefully leaves. That does not. Did Beskan use the congressional definition of fugitive? Beskan. Or did it use the definition that had been laid out in jurisprudence by this court and other courts with regard to what a fugitive is? Beskan used the definition from Black's Law Dictionary, which is flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony. That's a quote from Beskan. Does it say notice in there? It does not. It says arrest. It does not. It does not. So I would suggest to you that your definition is wrong. So let me jump in. I wonder if part of the argument here, and I think this back and forth is framing, I think, the debate between the government and your position well in some ways. It seems to me that the tests, as we articulate them, seem to hinge on subjectively what's in the head of the individual. Did they leave for the purpose of evading some sort of process? Are they remaining abroad for the purpose of avoiding? Or do they just happen to, they're going about their lives in the ordinary course, and that leaves them abroad? I'm trying to figure out if that's true, that whether the test actually hinges on subjective intent. And if so, how is that workable in a world where we can't have hearings, evidentiary hearings, to figure out what somebody's subjective intent was? It seems that that creates some pressure for some kind of bright-line rule. And I gather the government's position is if you committed a crime here and then you leave, one way or the other, you're a fugitive. I'm just interested, and sorry that was a long, rambling question, but I'd like your thoughts about that dilemma. No, I understand the question, Your Honor, and I think the government's definition, we submit, is inconsistent with the case law, the definition, the statute I read that's analogous. As to your question about why do we look at intent, well, the precedent says we do look at whether, particularly in the constructive flight context, we look at whether the reason for remaining abroad is for the purpose of avoiding prosecution. And the way to assess that without a hearing is to look at the ties to the United States, what courts do. Does this person have property here? Are they a citizen here? Do they have family here? Do they have bank accounts here? And are they remaining abroad? Can we say, can we infer that it's for the purpose of avoiding prosecution? And I would submit on these facts in our case, it's just the opposite. It sounds like an objective test you're describing, though, right? We're looking at extrinsic. In other words, I can't think of other areas of law where we infer somebody's subjective intent where they're, you know, the facts could support either scenario. We draw that kind of inference without hearing from them. Your Honor, in criminal cases, the government often tries to establish a defendant's intent without, through evidence of what they did, without hearing testimony from the person individually, even if a hearing were available. This is a person who seeks to invoke the right to come into the United States, kind of like a special appearance. In a civil matter, this would be a limited appearance for jurisdictional purposes. But this is like a special appearance on her behalf. In fact, Judge Jacobs referred to it as a constitutional right to contest the legitimacy of the proceeding, although the Supreme Court's never said that, even remotely. But in any event, Beskan is the rule with regard to the Second Circuit. So, but I don't understand how that works then. I mean, she had a child here. She had her own child here. Yes, Your Honor. She lived here for up to three months, at least at one point in time, did she not? I believe in 2013, Your Honor. She came in advance of the other woman that was coming into the United States who had previously come in, whom she had helped come into the United States to have a child and then leave, so that the child got the benefit of birthright citizenship. And her own child has the benefit of birthright citizenship, does she not? Yes, Your Honor. Her son or child is a United States citizen living in Moscow or Russia someplace. So it's not like she doesn't have a bit of a connection to the United States. She came and she procured living accommodations for the birth of the second child for up to a year with regard to the second woman that was coming into the United States to have her child. Is that correct? Yes, Your Honor. And she used a shell corporation with regard to the use of monies to procure those rental opportunities. Sounds like she has substantial connections. Now, compare her to Ms. Beskan. Had Ms. Beskan ever been into the United States? No, Your Honor. Had she done any business transactions directly with a company in the United States? I'm not sure, but I don't believe so. The answer is no. Had she registered any indication that she wanted to come to the United States? I don't believe so, Your Honor. How is she remotely like Ms. Beskan? Your Honor, the question is the quality of the connection. How many times does she have to come to the United States before we suspect that she likes to come to the United States? I would submit a lot more than she did in, for example, the Carlson case. So anyone who comes to the United States, perhaps engages in financial fraud, four, five, six, seven times over the span of four or five years, can say to this court or to a district court, I'm entitled to challenge the legitimacy of the indictment before me, but I don't have to show up. Can they be arraigned? Can they be arraigned on the indictment? The answer is no. Can they challenge the sufficiency of the indictment, the evidence before the jury? The answer is no. Perhaps, perhaps the only challenge she can raise is the extraterritoriality claim, because that's what Beskan raised. Beskan didn't raise any other challenge to the indictment, did she? I don't believe so, Your Honor. Can she challenge the venue? Is it your view that she's entitled to raise the venue designation in the indictment? Yes, Your Honor. Why? Because it is an invalid charge and she should be allowed to test the sufficiency of the charge. She should be allowed on what basis? What constitutional right allows her to do that? When? When she cannot be tried in absentia. Your Honor seems to be referring to the language in Galvi-Gonzalez, which characterizes our position as heads I win, tails you'll never find me, in an effort to show the unfairness of allowing someone in our position to challenge. I find it curious that the Supreme Court has never found a right to entitle it. The disentitlement doctrine is a discretionary doctrine. It's not a question of a constitutional right. It's a question of whether the Court is not going to hear the argument on the merits, because in order to protect its own integrity. But on the heads I win, tails you'll never find me, that's the way this Court has characterized the defense position. I would submit the governor's position here is comparable in that if she were to come here voluntarily and heads she wins and gets acquitted. Presumably disagree with you when we find that she is a fugitive. There's still – she's still entitled, at least under the law that we have at BESCON, she's still entitled to us to examine whether the Court did an appropriate determination with regard to its exercise of discretion, correct? Correct, Your Honor. All right. Then let's go through that and tell me why you think it was an abusive discretion. So first, there are four factors this Court looks at. The first of them is assuring enforceability. And that's where that quote from Gall comes in. The heads I win, tails you'll never find me. But we know she's not coming back, don't we? I would submit the issue with the government taking that position here is that for the government, if she were to come and get acquitted, the government could say, well, heads you win, you get acquitted, but tails, we'll put you in immigration custody. And we'll be able to ship you wherever we like because you don't get due process as a noncitizen. So the assuring enforceability question – Wait a second, counsel. Wait a second. She comes and she gets arraigned if she were to come to get arraigned. But enforceability, the fact of the matter is, is that she does not intend to return. And in Biscond, that indicates to some degree that it's not going to be enforceable because no one can force her. She's not subject – there's no treaty between Russia and the United States with regard to extradition. She's not subject in any way, shape, or form to come to the United States, correct? Your Honor, the government arrests people many years after the fact. Just answer my question. Yes, Your Honor. We'll get along better if you answer my question. Yes, Your Honor. Okay. So the answer is that she's not going to come back to the United States. Not presently. And so therefore, it's not enforceable? At this moment. Okay. Go on to the next. The next is the penalty for flouting the judicial process. There was no judicial process. When she went home, she was interviewed. She voluntarily was interviewed. She gave her cell phones voluntarily. While she was in the United States. While she was in the United States. The government did nothing for a few days. She didn't live here. She doesn't have status here. She had a visa, but not – she's not a citizen. She went home. She didn't flout the judicial process. She's overseas. And the question there goes back to the original question of whether she's a fugitive. But she did not flout the judicial process when she went home. Did the court discuss that in its determination? The court briefly discussed it in one sentence that I don't have in front of me. But I would submit she did not leave. The court said she did because she left after committing a crime. My position is she left at a point when there was no process to flout. So you wouldn't be penalizing flouting the process by disentitling her. The third factor is discouraging flights from justice and the efficiency of the courts. That I would submit favors us. She didn't flee from justice. We already discussed how there was no process in place. And as to the efficiency of the courts, there's no reason the government should not want its charges tested now rather than perhaps many years from now if she's ever stopped while traveling and brought to the court many years after the fact. What are the ongoing collateral consequences to her of having this outstanding indictment that let's assume you lose? What consequences other than a potential impact if she comes here is she experiencing going about her life back home? Well, typically an individual under criminal indictment in the United States, and I don't know what processes the government has availed itself of, but if they've put a red notice in place, for example, then any time she were to travel, she could be picked up and brought to the United States or put into custody in a foreign country with extradition proceedings and she could fight that. So this not only impacts her ability to come back here, but it impacts her ability to go about her life to the extent it involves travel. It can and often does, Your Honor. Canada. To anywhere where the government's red notice would be respected, to any country where the government's red notice would be respected, if they in fact have one, which I would guess they do. And so it has a tremendous effect. And it promotes efficiency rather than the opposite, to litigate this now and to have Judge Castell reach a decision on the merits. So that's the third factor. And then the fourth factor is avoiding prejudice to the government. In the district court's opinion, the district court relied on the fact that the government had promptly indicted her. The district court used the word prompt. But the government's indictment was not prompt here. It was months after the fact after she'd already gone home. Nothing would have stopped the government from arresting her and detaining her in California after she had allegedly lied and engaged in all of the conduct they now characterize as allegedly criminal. But they didn't. They waited several months, almost four months after the fact, and she was already home at that point. And so... Can she give them the pass codes to her phone? Your Honor, I'm not sure the record shows one way or the other whether she gave them access to the phones. But certainly in that time frame, at a certain point the government's able to access them, and she did turn them over voluntarily instead of secreting them back with her to Russia. So the prejudice to the government, I would suggest, was not properly weighed in the district court because their indictment was not prompt. And on the flip side, the prejudice to our client is great, whereas we were just discussing she is facing this indictment where she's unable to challenge it on the merits. She's unable to challenge the extraterritoriality element on the merits, which this court has said should be allowed in the Beskin decision. And meanwhile, if she were to come here, she really couldn't win where she could be acquitted and the government could still imprison her and not afford her due process and ship her abroad or use her as a pawn in foreign relations. My colleague will not be able to guarantee this court. I don't believe that the government would afford her due process as a non-citizen in the event she were acquitted. And I think that alone— There's not a special visa for coming here to face criminal charges. I'm not aware of one, unfortunately. Okay, fair. Hey, let me take you back just for a second to the fugitive question. I'm still trying to get my head around sort of a framework. I mean, Biskan was sort of a cheat because every fact that you could think of, right, favored the defendant. The conduct was—criminal conduct was abroad. She was abroad. She'd never been here. And she had an extraterritoriality claim that she— So this isn't that, right? This is less than that. And so I'm trying to figure out if there's a framework we could give for evaluating. I mean, one position, and this might be the government's position, is anything less than that, you're a fugitive, right? So it may be that Biskan is sort of a one-off on the far extreme, but anything else, you're a fugitive. That's obviously not your position. And so if we were trying to figure out what guidance to give courts to discern whether there's the requisite subjective intent to make you a fugitive, what would we say? Would it just be ad hoc and then over time we would develop patterns by looking at the cases or are there a set of factors that you would have us look at? And what kind of weight would you give them? Yes, Your Honor. I think—well, first of all, the question seems to be focused, and I'll apologize if I'm miscarried, seems to be focused on the constructive fugitivity issue where Biskan articulates that as a person who allegedly committed crimes while in the United States, as our client allegedly did, but was outside the country, as she was, for whatever reason, I'm quoting from Biskan, when she learned her arrest was sought and who then refused to return to the United States in order to avoid prosecution. Yeah, I'm collapsing the two because partly I think they do get collapsed. The government seems to be collapsing them by saying, as I'm reading the brief, you commit a crime here and you're somewhere else when you're indicted. You're a fugitive unless you come back, right? So it doesn't sort of make—it doesn't matter whether you fled or whether you went home in the ordinary—went back to that place in the ordinary course. I think the concept of fleeing is implicitly a subjective intent because if you're just going home in the ordinary course because that's where you live, that's not fleeing. So I reject the narrowing of my question to just the constructive, but my broader question is what is the test you would have as a supplier, the framework for evaluating all these cases that fall in this middle area? I think there are two key pieces of the cases and of the other authorities we cite, one of which is notice, and you see the concept of notice referenced in 2466, which is the forfeiture statute where it asks whether the person has notice or knowledge of the fact that the warrant or process is issued. You also see the concept of notice discussed in the D.C. Circuit's Solberry decision, which is cited at page 31 of our brief, and it says mere notice is not enough. But I think notice is the first question. But notice, and then we get into the fight about notice of what, right? There's clearly notice here that the feds are sniffing around and interviewing her about criminal conduct. Is that not notice? I would say it has to be notice of process, and that's the very language that 2466 uses, and that Solberry uses. It says notice of a warrant is not enough, but it is a factor, I think, whether a person has notice because that contributes to their intent. So someone who commits even a violent crime and then leaves the country but has got no notice of the fact that there's a criminal warrant for their arrest is not a fugitive? Jeez, that doesn't sound right to me. Are you serious about that? The question is whether they would be disentitled, and there may well be reasons to disentitle that person within the court's inherent authority. So you're saying they're not a fugitive? They don't fit your definition of fugitive? It's yes or no. I commit a violent crime. I assault someone. I leave. I leave. I go back home to Greece. No one's arrested me. I just leave. In fact, I stay in there a couple of days, and then I go home. Nobody's tracked me down. And I'm now back in Greece, and I have no notice. I'm not a fugitive. They don't qualify under the notice element I was discussing with Judge Robinson, but under the next element I was going to get to, I think that that would address the situation Your Honor is laying out, where the concept of notice is one thing you see thread through the statute in cases, but there's also this concept of the kinds of ties to the U.S. the person has. And are they the kinds of ties that one would ordinarily return to? And then in the case of the fugitive. I'm a resident of Greece. I'm a permanent resident of Greece, and I'm just here, and I beat the snot out of somebody. And then I go back to Greece. I'm not a fugitive. I think the court could assess the totality of the circumstances in that case and find that that particular person is not coming back with the purpose of avoiding prosecution because the conduct was such here, the violent conduct or the like, was such that you can infer that the reason they're not coming back is to avoid prosecution. One kind of crime is knowable by its nature. The other crime is not knowable because it's a little bit more sophisticated, involves complicated financial transactions, a presidential executive order, something like that. Your Honor, the question is the quality of the ties. This is a real complicated, this sounds like a very complicated path of analysis. Yeah. So let me keep going then to make sure I fully understand the complexity that my colleague has identified. What are the other factors that you would throw into the mix? I would say the quality of the ties in the United States encompasses whether somebody has a home here, family here, bank accounts here, relatives here. These are the things courts in these kinds of cases have typically looked at to assess whether the person who is abroad, whether their purpose is to avoid prosecution, whether it's someone who would ordinarily come back here but is not because of the presence of those factors. Other than the quality of the notice. Wasn't your client such a person? Hadn't she been here many times and then stopped? I think, Your Honor, our client is the opposite of a kind of person. She has no—although she has been a visitor here, the government says 10 or more times over 10 years, which is not all that frequently, she is not somebody who, like in the Cornelson case, had a home here and lived here 100 days a year and had bank accounts here, relatives here, any of those things that are the kinds of things you can infer one is staying away from when they're abroad with her. She was a visitor here. She had a child who was a citizen. But at the present moment, at this moment, which is the moment you look at, there are no ties here for her to return to. The only thing here is a prosecution. And I think on that circumstance, you can infer that the reason she's remaining abroad is for the purpose of avoiding that prosecution. One of the factors that the Court seems to talk about in Beskon that was significant, not only for the discretionary analysis where it fits more logically in my mind, but even in the assessment of fugitivity, is the nature of the challenge. And in particular, the Court seemed to put some weight on the fact that this is somebody with an extraterritoriality challenge, and there's something sort of about that challenge in particular that would be unjust if the U.S. is reaching beyond its jurisdiction to indict somebody, forcing that person to then come back and subject themselves to jurisdiction that we don't have. Is that a factor in the fugitivity analysis, or is that really a factor in the discretionary analysis? I believe it's a factor in the fugitivity analysis, at least as Beskon articulates it. And that was the third point I was going to get to. So notice the quality of the ties to the United States, whether the kind someone would come back to as opposed to just visiting. And then third is the nature of the challenge being brought. And where the nature of the challenge being brought is to the validity of the application of the law, to the extraterritorial application of the law, that is the kind of challenge that this Court in Beskon said is authorized, that it should not be disentitled. One could imagine challenges that perhaps should be disentitled that are not of that nature, but where the question is, is the executive reaching too far to apply the United States law to someone whose home is abroad who doesn't have connections here, regardless of whether they visited in the past? That is the kind of challenge where the application of this discretionary doctrine is not appropriate. That's why I asked you about venue. Venue is not at all like an extraterritoriality challenge. Venue is just where, where the charge should be filed. And so should we split your fugitive analysis and parse it out as to the venue that she wants to raise venue, separate or apart from the extraterritoriality that Beskon seemed to track? Your Honor, I would suggest that once you have a valid challenge before the Court, a valid challenge to the- I don't understand that. How is the venue in any way related to the fact that she's from Russia, lives in Russia, wants to stay in Russia, doesn't want to come back to the United States? It has nothing to do with it. At least the extraterritoriality maps a little bit with regard to some of the concerns about entitlement. If the district court is entertaining the challenge to the indictment based on its extraterritorial application of U.S. law, once the district court is engaging in that analysis, I would suggest that at that point it's appropriate for the district court to assess any other challenges to the indictment on the merits. But this is about lying to the FBI in the United States. And it's clear that that crime occurred within the United States. It's just a question of where the indictment should be determined. It has nothing to do about attempting to enforce laws beyond the borders of the United States. Your Honor, if this Court's ruling were that you can't disentitle someone- Presumably she was just charged with lying to the FBI and you wanted to raise the venue. Is your position that she's entitled and the district court had done what it's done, that you'd be entitled to reversal here? My position is that that factor would not be successful. So I think we would still win because she's not a fugitive. But I would admit it is a weaker case because the factor of the extraterritorial- Well, even if she's a fugitive, they still do the analysis. And I'm not- let's give you the fact that she's not a fugitive. And the court had actually done the analysis like Judge Jacobs did in Vescon. In your view, it would be an abuse of discretion to not allow her to raise the issue? I would still assert it's an abuse of discretion because here the lack of venue is so obvious and transparent on the face of the indictment that it is one Judge Castel- So that's the standard, whether it's obvious as opposed to whether in some way it's correlated to her fugitive, non-fugitive status? The question is whether the government is abusing the legal process to try to accomplish some other goal. I doubt how other district courts, if we were to agree with your position, would remotely understand what that is there to do. Your Honor, the three factors I discussed, is there notice? Are there ties to the U.S.? And is there an extraterritoriality challenge? Are all factors district courts can and do consider regularly in these very kinds of cases? And all three of them support our argument here, not the government's. Okay, this has been helpful. And I know we're going to get to hear from you again. Thank you, Your Honor. Any other questions? Attorney Vandberg. Good morning, Your Honors. Vlad Vandberg on behalf of the United States. May it please the Court. This case presents a straightforward application of the Fugitivity Doctrine, which was correctly applied by Judge Castel, in finding that Natalia Bartikova was a fugitive and that all four independent purposes for the Fugitive Disentitlement Doctrine were met in this case. Judge Castel correctly found that Natalia Bartikova- A very small question. You say you represent the United States. What office are you from? The Southern District of New York, Your Honor. There's still- never mind. Which brought the indictment and- That's fine. I want to make sure. Yes, Your Honor. So you heard the back and forth before. Could you sort of, if it can be crystallized, do you have sort of a rule you would have us follow in these cases? Is the rule- what I think the rule that you would have us follow is you committed the crime here and then you left. You're a fugitive. Is that an oversimplification? That, in a sense, is a rule if it's clear that you're leaving in order to evade prosecution of some sort. Well, wait a minute. What makes it clear if you live- if your home is abroad and your reason for being here has expired, then what makes it clear that your reason for departing is to evade rather than to go back home where you live? So we're putting aside cases in which somebody commits a crime here and then for whatever reason years later is found abroad when the indictments come. Okay, so you commit a crime here and you leave within some sort of temporal relationship to committing the crime here. Flight is inferred by the circumstances of the departure. And in this case, the defendant was caught red-handed in the United States at the airport by FBI agents while committing the sanctions evasion case. She was given a subpoena from the grand jury in the Southern District of New York with her name on it calling for her to surrender her cell phones. She was then questioned by those FBI agents over the course of hours about the specific crime that she was in the middle of committing and her prior involvement in this conspiracy. She gave the FBI demonstrably false answers. She said she had never spoken to Deripaska directly. She said she had not helped Voronina do transactions in 2020. Do we, I mean, it's interesting to sort of think about sometimes these things chase their tails. That's the allegation that she lied. Do we treat that as true for the purpose of the disentitlement analysis or do we, are we agnostic as to whether she lied for the purpose of the. The court takes the allegations in the indictment for their truth. So the indictment alleged that, I mean, you could construct allegations that kind of buttressed the flight inference, right, and they would just be allegations. And this gets back to my like normally subjective intent is discern from evidence. But if your allegations create a picture of that support flight, we're done. Disentitlement applies. Yes. Okay. As a traditional fugitive, the moment she lies to the FBI, knows that she's lied to the FBI, and then absence herself from the United States within three days, that is as a practical, as a common sense matter, she is fleeing from prosecution. So you're giving, and it's reasonable, I'm not, but you're giving me a very tied to the facts of this case assessment, and that may be all we're left with in the end of the day. What I'm trying to figure out, since we're now sliding down the slippery slope from Beskin, I'm trying to figure out, okay, what, is there some sort of guidance we can give besides on these facts, this is flight? Well, one of the key factors that makes this flight is the fact that there was, that the defendant was approached by the FBI. The constructive flight cases have to do with circumstances where there's nothing in the record suggesting that the reason the person left the United States had anything to do with the commission. So you would say, you would say notice is important and she had it here. In order to assess flight, it doesn't have to be notice as in a formal notice. No, no, but some sort of awareness that you're, somebody's potentially after you. Yes. Okay. In order to use the common law definition to show that the defendant is leaving to evade prosecution, and by the way, it doesn't have to be a defendant. The Viscount Court used the Black's Law Dictionary, which used the definition of a criminal suspect. So a criminal suspect who is leaving to evade a prosecution is a traditional fugitive. And that's the end of the analysis at that point. But here there's more. When the defendant learns that she was indicted just three months later, she refuses to come back. And under this court's well-established constructive fugitive jurisprudence, putting aside her reasons for leaving, the FBI contacts, that in and of itself is enough. Well, but that's where Beskin comes in, right? Because you could say the same thing about Beskin, but the court said, well, no, she's just living her life in her home. And so why would we call upon her to come back here? Because in Beskin, the rule is— Well, Beskin had never been in the United States. Yes. And so, I mean, the difference is she came here—I mean, in her particular case, she had noticed that something was up. A grand jury was interested in something. In fact, she surrendered her phones, and then she leaves. Beskin never crossed a U.S. border. And so one can't—it's hard to make some kind of conclusion about her continued stay. As Judge Jacobs said, she lives here. She stayed here. She's never had any intention of coming here. That's right, Your Honor. Beskin did not refuse to return to the United States, and that word return is key in the jurisprudence because she was never here for any reason. So if she had been here a decade—I'm just trying to figure out again the factors and how they weigh, right? So past history in the U.S. mattered. Does it matter past history generically, or does it matter past history as it relates to this commission of the alleged crime? If the defendant committed the crime in the United States and then refuses to return to the United States, that's all that matters. Okay. The Biscayne court did additional analysis because she was never here to see whether there were other substantial ties that could indicate whether her reasons for staying away had something to do other than the prosecution. So you would support a bright-blind rule that says with respect to conduct that was committed in the United States, regardless of whether you fled or you just went home, if you're indicted for conduct that you committed in the U.S. and you don't come back to face the charges, you don't get to ask us to knock them out. That's correct, Your Honor, and that is the rule that the Second Circuit had adopted in a number of cases we cite. In the United States v. Blanco, the defendant was indicted while abroad in Colombia as a citizen of Colombia for conduct that was committed in the United States. She stayed in Colombia for 10 years, much like the defendant is staying in Russia, her home, and the government couldn't extradite because at that point Colombia wasn't extraditing its citizens the same way that Russia isn't extraditing their citizens. She was deemed a fugitive because she made no efforts to return. So in that, I mean, there's something appealing about the clarity of that. One of the things I'm struggling with with that is how it interfaces with what we say we're looking at, right? So in the constructive fugitive test, we say we're looking at their purpose for not coming back, which suggests we care what, you know, their subjective intent. You're adopting, I think, a legal presumption that if they committed the crime—I will let you—if they commit the crime here, then their not coming back is for the purpose of evading prosecution. Yes, Your Honor, in both Blanco and United States versus $45,940, the court looked at, has the defendant made an effort to return? And if the answer is no, that is the objective fact that shows that they are a constructive fugitive. So it's not a subjective intent that's in the defendant's mind. Courts could not practically use that sort of rule in determining fugitivity. It's the fact that in both of those cases, the defendant did not contact the U.S. consulate, did not try to apply for a visa to come back and be at the arraignment, made no efforts to return after learning of the indictment. So if the conduct—I guess what this doesn't help us with is the scenario we don't have before us, necessarily, where the conduct is directed at the U.S., but it's committed by somebody outside of the U.S. And I guess that's another case for another day as to the circumstances under which they're a fugitive. Well, Biscond was—had a number of special facts, as Your Honor says, recognized and applied the law to those special facts. But even in Biscond in footnotes 6, I believe Judge Jacobs acknowledged that cyber criminals and people who commit crimes behind the computer and do something to conceal themselves and to absent themselves from the United States, they would still be constructive fugitives. The thing about Biscond that was so unusual was that she had a legitimate job. She— Well, and her crime wasn't really directed at the U.S., right? Her crime was a novel financial crime that was directed at employees in London who then transmitted information that had an effect on— Yeah, unusual. That is an unusual set of facts, you know, that the court could decide. But in the mile run of cases like the ones we've cited, if you make no effort to try to return, you're a constructive fugitive. And in the United States versus $49,940, very similar circumstance. A defendant comes to the U.S., lies, commits a 1,001-up violation to border agents, gets deported by the United States to Canada, learns that he has been indicted, and then argues, I'm not a constructive fugitive because I can't come back having been deported. And what mattered there is that the defendant made no effort to return. Well, what is the answer? That is sort of a puzzle that I hadn't really thought about until—really in the depth until this argument. The notion that, well, coming back to face the charges when you don't have a visa and you don't have legal status creates a whole new set of risks that other individuals who are facing indictment who are, you know, domestic don't face. What's the answer to that? The Second Circuit's answer to that in the case that I just cited was that there is a pathway. The defendant in that case needed to go to the consulate and receive permission. And the government routinely works with defendants abroad in order to get them parole visas if they don't have legal status to come in and facilitate their arrival in the United States to face the charges. So there is a status. There is a mechanism to make that happen. Yes. And what matters is that the defendant has made no efforts to try to— And so if the defendant tried and then for whatever reason the consulate said, no, we don't want you here, then at that point you wouldn't be able to invoke the freedom of disentitlement. That would be a factor in considering whether they've made efforts to return, which is the key analysis. And, look, if the defendant is in a hospital bed somewhere and is physically incapable of free travel, that would also be a factor. But that's not the circumstance here where it's clear from the defendant's counsel that she is not coming back and that she is making an intentional decision not to come back. Unless the Court has any other questions, we'll rest on the papers. Thank you. Appreciate your arguments. Tony Jacobs. Thank you, Your Honor. Just three brief points in response to the issues my colleague raised. First, at least in the forfeiture context where this more typically comes up, it's the government's burden to show by a preponderance that disentitlement is warranted. And Mr. Vainberg just referred to a number of things like how, you know, maybe the defendants in another case are in a hospital bed or something else or the government could facilitate. There's nothing in the record here suggesting the government ever made an effort to facilitate her coming here to offer her status or even to show that she's not confined elsewhere. It's the government's burden to show these things. The record here is silent on all of that, and I would submit the Court can't consider those factors. Well, Biscott doesn't lay the burden on the government. This Court has, in the U.S. v. Technodyne, the Court lays out that it's the government's burden by a preponderance to show disentitlement. In the forfeiture context, I would submit that applies here. Forfeiture might be a different matter, but this is invoking a right when you refuse to be before the Court's jurisdiction personally. She's not here. It's your that's here. She's not here. The Court can't do anything as to her whatsoever, nor will our law allow it to do so. So she's invoking a right on her own and says that she's entitled to it. And they say, no, she's disentitled to it because she's a fugitive, right? It's them invoking disentitlement, yes. So she doesn't have to prove that she's entitled. They have to prove she's disentitled? Correct, Your Honor. Okay. And that is consistent with all of this Court's case law, and there's no decision putting the burden on a defendant. I'm not certain that the forfeiture law carries that as far as anything. Go ahead. The government hasn't cited any case, and there is none, I'm aware, putting the burden on the defendant. It's just weird to prove a negative, right? If the question is, did she make an effort to come here, I guess the government can say, well, we've not gotten any calls to the embassy asking. I mean, you seem to be suggesting not only a burden of proof but a burden of action, that the government has an affirmative duty to reach out to her through the consulate and invite her back rather than her having an obligation to do that, even if it's the government's obligation to prove she didn't. Your Honor, that's precisely the burden this Court has imposed in the forfeiture context, where it asks the government to establish, by a preponderance, that somebody's not coming here in order to avoid prosecution. But haven't we also specifically said, look, that forfeiture is its own special definition and it's far broader and doesn't apply here? I think that Beskin's suggestion is that more people are fugitives in the forfeiture context than in the criminal context. If anything, this context that we're in here should be construed more narrowly because of the graver consequences. But just one additional point, Mr. Corwin. My colleague mentioned that the FBI approach here is one of the things that makes flight something the Court can infer because she fled immediately after the FBI approach. I would say absolutely not on the facts in this case, where the FBI didn't tell her she's a subject or a target or to remain in the country. They gave her a subpoena from the Southern District Grand Jury, Federal Grand Jury. Did they not? Well, we don't have it in the records. They have proffered that. Did they give her a grand jury subpoena? The government proffered that, and they also have proffered that it was fully satisfied. The government has proffered that the subpoena was fully satisfied when she gave them her cell phones. And that's just the opposite of saying, no, no, stay in the country. If someone asked you for your cell phone, do you think they might be interested in what was in it? I think they might be interested in somebody else who was communicating with me, as is generally the case when the government takes cell phones. Thank you, Your Honor. Appreciate your arguments. Thank you both. Well argued, Joe. Thank you very much. We'll take it under advisement.